Loi Van NGUYEN, Petitioner–
Appellant,

v.

Gary LINDSEY, Attorney General
of the State of California,
Respondent–Appellee.

No. 98–56880.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 1, 2000

Filed Nov. 30, 2000

Frederick L. McBride, Santa Ana, California, for the petitioner-appellant.

John T. Swan, Deputy Attorney General, San Diego, California, for the respondent-appellee.

Before: BROWNING, NOONAN, and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

An innocent bystander was killed in the crossfire of a shootout between two rival gangs. Two of the combatants were charged with murder and tried separately. At the trial of the first defendant (Phung), the prosecutor presented evidence that Phung had fired the first shot. At the trial of the second defendant (Nguyen, the petitioner here) the prosecutor introduced Nguyen's own statement to the police that someone in his car had fired first. On state habeas review, an evidentiary hearing was conducted in state court. The California Court of Appeal found as matter of fact that the prosecutor's underlying theory was the same in both trials—that in a case of voluntary mutual combat, it did not matter who fired the first shot. It also found that the prosecution's arguments were consistent with the evidence actually adduced at each trial, and that the prosecution had not falsified evidence or engaged in bad faith. On this record, Nguyen has not shown that the state court's rejection of his due process claim was an unreasonable application of clearly established federal law. We affirm.

## I. Facts

We take the following recitation of the facts from the Opinion of the California Court of Appeal upholding the denial of Nguyen's state petition for writ of habeas corpus:

> This case involves a gun battle between rival factions of a street gang which resulted in the death of an innocent bystander. Doi Phung, a Nip Family Gang (NFG) member, assaulted Tam ... another NFG member. To save face, Tam needed to retaliate. [Nguyen] and several other NFG members aligned with Tam, including Phat Cao, nicknamed Cholo, went looking for Phung. They contacted Phung by telephone and arranged a meeting at a church to discuss Tam's beating. In fact, Nguyen's group intended to give Phung a beating.
>
> The group, which included eight NFG members armed with at least two guns, proceeded to the church in a three-car caravan. Before reaching the church, they saw Phung standing on the sidewalk in front of it apparently armed. They stopped at a convenience store across the street. The caravan left the convenience store parking lot and, while one car proceeded to the church, the other two vehicles made U-turns and engaged in a gun battle with Phung. Lazaro Acosta, Jr., who was sitting in a car parked at the convenience store was killed when a bullet from a .380 caliber handgun passed through the rear of the vehicle and struck him.
>
> The police found four .380 caliber shell casings on the sidewalk in front of the church rectory and five 9-millimeter casings in the street. With the use of a laser beam, the police traced the trajectory of the bullet which killed Acosta to where Phung had been standing. Later the same evening, Phung was arrested and the police discovered the murder weapon in the backseat of a car in which he had been a passenger. The police seized the 9-millimeter handgun during the investigation of another, unrelated shooting incident involving NFG members later the same evening.
>
> After his arrest, [Nguyen] gave a statement to the police. He admitted

driving one of the cars involved in the gun battle and said Cholo fired his weapon after Phung displayed a gun. [Nguyen] admitted one of the passengers in his car brought a gun and another passenger fired during the shooting.

Nguyen was convicted of first degree murder and participation in a criminal street gang pursuant to Cal.Penal Code §§ 187(a) and 186.22(a). The jury also found that Nguyen was vicariously armed with a firearm during the commission of the murder and had committed the offense in association with a criminal street gang. *See* Cal.Penal Code §§ 12022(a)(1) 186.22(b)(1).

Both Phung and Nguyen were charged with Acosta's murder but each was tried separately. At Phung's trial, the prosecutor's theory was that each rival group went to the church intending to ambush the other and engage in mutual combat. The prosecutor also argued to the jury that Phung could not claim self defense because he sought the quarrel and had agreed to engage in the fight. However, she also argued that Phung had fired the first shot, an argument that had a basis in the evidence adduced at the trial; the court had received in evidence, by stipulation of Phung's counsel, the statements of two members of Nguyen's gang to the effect that Phung had fired first.

At Nguyen's trial, the prosecutor introduced into evidence *Nguyen's own statement* to the police in which he said that Cholo, a passenger in the car Nguyen was driving, fired the first shot when they arrived at the church in search of Phung. The prosecutor's overriding theory was that Nguyen and his fellow gang members were all guilty of murder under the "provocative act doctrine," regardless of who

fired the first shot, because they had engaged in mutual combat. However, in closing argument, she did make reference to Nguyen's statement that Cholo had fired first.

Nguyen was convicted of first degree murder and participation in a criminal street gang. *See* Cal.Penal Code §§ 187(a) and 186.22(a). The jury also found that Nguyen was vicariously armed with a firearm during the commission of the murder and had committed the offense in association with a criminal street gang. *See Id.* §§ 12022(a)(1) and 186.22(b)(1). He was sentenced to 25 years to life for murder plus three additional years.

Nguyen filed a state habeas petition and argued that the prosecutor's use of the inconsistent evidence of which gang fired the first shot violated his due process rights. At an evidentiary hearing on the petition conducted by the state trial judge, the prosecutor testified that the two statements that Doi Phung fired first were admitted at Phung's trial by stipulation, at defense counsel's request, and that the statements "were not available" for use at Nguyen's trial.[1] The trial court denied the petition citing *People v. Turner,* 8 Cal.4th 137, 193, 32 Cal.Rptr.2d 762, 878 P.2d 521 (1994) and *People v. Farmer,* 47 Cal.3d 888, 923, 254 Cal.Rptr. 508, 765 P.2d 940 (1989) (recognizing that inconsistent theories in different cases do not violate a defendant's due process rights if based on the record and advanced in good faith).

The California Court of Appeal affirmed, holding that the prosecution presented the same fundamental theory of the case at each trial-specifically, that in a mutual combat gun battle when a shot kills a third person, the initiator and those who voluntarily took part in the battle are responsible for the crime.[2] The California

---

1. It is not clear why the statements were unavailable, but the prosecutor's testimony on that point was not refuted.

2. The California Court of Appeal held:

The prosecutor recognized the criminal culpability of both defendant and Phung's group and merely emphasized the evidence as it related to the defendant. The prosecutor argued defendant was guilty of murder under the provocative act doctrine because he, along with his fellow gang members engaged in a "gun battle." Although at points, particularly during her discussion of defendant's self-defense claim, she argued the evidence showed Cholo fired at Phung

Supreme Court denied review without comment.

Nguyen filed a petition for writ of habeas corpus in federal district court and argued that the prosecutor's inconsistent theories of the case denied him the defense of self defense in violation of due process. The Magistrate Judge recommended that the District Judge deny the petition because no clearly established federal law, lower court or Supreme Court, holds that it is a denial of a defendant's right to due process for a prosecutor to make inconsistent arguments in trials against different defendants. The District Judge adopted the recommendation and denied habeas relief. Nguyen appealed.

## II. Discussion

### A. Jurisdiction

Because the habeas petition was filed on February 24, 1998, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies. *Lindh v. Murphy,* 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). We have jurisdiction pursuant to 28 U.S.C. § 2253.

### B. Standard of Review

■ We review the district court's denial of the habeas petition de novo. *Eslami-*

*nia v. White,* 136 F.3d 1234, 1236 (9th Cir.1998).

■ Under AEDPA, we cannot grant habeas relief unless the underlying state decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to it in the state court proceeding." 28 U.S.C. § 2254(d). An "unreasonable application of clearly established law" exists if the state court identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the case. *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1518–21, 146 L.Ed.2d 389 (2000); *Van Tran v. Lindsey,* 212 F.3d 1143, 1153–54 (9th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000). We apply the clear error standard to determine whether an unreasonable application of clearly established law exists under AEDPA and *Williams:*

[W]e must reverse a state court's decision as involving an "unreasonable application" of clearly established law when

first, that assertion was not the primary focus of her argument.

The prosecutor cited the prior altercation between Phung and Tam, the attempt by defendant and others to locate Phung before the shooting and the subsequently arranged meeting. "Now, they have already given Doi Phung notice that they are after him . . . So it's only reasonable that they are going to know that this is not going to be a peaceful confrontation. That Doi Phung is also going to be prepared." Once the group realized Phung was armed, the prosecutor noted there was evidence the group stopped at the convenience store "So that they could check and see that everybody was together, everybody had their guns ready, everyone knew exactly where Doi Phung was so they could take him by . . . surprise."

Next, the prosecutor argued defendant's group "drove . . . towards Doi Phung . . .

and began firing." The prosecutor also cited defendant's statement and the physical evidence to support a finding Cholo initiated the gunfire. She concluded her discussion of the provocative act theory as follows: "If you go in fighting with a rival, the faction of the gangs, that gang member already knows you are . . . going to fight, he already knows you've been searching for him and you start shooting at gang members, it's reasonably foreseeable it's a reasonable response to be expected that there will be gun fire in exchange."

"When that gun fire kills, then you're responsible for the crime as well when you have initiated that gun battle or have been part of the gun battle." This argument was proper.

*People v. Nguyen,* No. GO16854 (Ct.App. Cal. October 18, 1996) (unpublished decision).

our independent review of the legal question does not merely allow us ultimately to conclude that the petitioner has the better of two reasonable legal arguments, but rather leaves us with a "firm conviction" that one answer, the one rejected by the court, was correct and the other, the application of the federal law that the court adopted, was erroneous-in other words that clear error occurred.

*Van Tran,* 212 F.3d at 1153–54. "[W]e must first consider whether the state court erred; only after we have made that determination may we then consider whether any error involved an unreasonable application of controlling law within the meaning of § 2254(d)." *Id.* at 1155.

## C. Prosecutorial Misconduct

 The Supreme Court has held that prosecutors violate a defendant's right to due process if they knowingly use false evidence. *Mooney v. Holohan,* 294 U.S. 103, 112–13, 55 S.Ct. 340, 79 L.Ed. 791 (1935); *Berger v. United States,* 295 U.S. 78, 84–89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). It follows that a prosecutor's pursuit of fundamentally inconsistent theories in separate trials against separate defendants charged with the same murder can violate due process if the prosecutor knowingly uses false evidence or acts in bad faith.

Petitioner makes no contention in this case that the evidence introduced against him was falsified or that she acted in bad faith. The California Court of Appeal found as a matter of fact that the prosecution presented the same underlying theory of the case at each trial—when a shot kills a third person in a voluntary gun battle, *the initiator and those who voluntarily took part in the mutual combat* are responsible for the crime. As to who fired the first shot, it is true that the prosecutor made different arguments at each trial, but it is also true that these arguments were consistent with the evidence actually adduced at each trial.

In Nguyen's trial, the prosecutor introduced into evidence Nguyen's own state-ment to police that Cholo fired first. Nowhere does Nguyen argue that the statement was inadmissable or explain why, once the statement was received in evidence, it could not be referred to in argument. Likewise, the statements introduced at Phung's trial were received in evidence at Phung's request, by stipulation of Phung's counsel. It is not clear exactly why this occurred, but the fact remains that there is no allegation of falsified evidence, prosecutorial bad faith, or even that Nguyen was surprised by the nature of the evidence introduced against him.

Nor is it shocking or even unusual that the evidence came in somewhat differently at each trial. Any lawyer who has ever tried a case knows that trial preparation is not a static process. As a case evolves, new witnesses come forward; others become unavailable. As new evidence is uncovered, other evidence loses it significance. What is received in evidence by stipulation in one trial might draw vigorous objection in another.

This is not like the prosecutorial misconduct found by this court in *Thompson v. Calderon,* 120 F.3d 1045, 1057–59 (9th Cir. 1997), *rev'd,* 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998). In *Thompson,* we found that in the second trial of defendant Leitch the prosecutor manipulated evidence and witnesses and "essentially ridiculed the theory he had used to obtain a conviction and death sentence at Thompson's trial." *Id.* at 1057. The positions taken by the prosecutor in that case were fundamentally inconsistent because different defendants were charged in separate trials with the same murder that had been committed by an individual. *Id.* at 1054–56. In this case, both defendants could be guilty of the same crime because of the nature of the crime-the murder of an innocent bystander during gang warfare.

In the prior trial of Phung, the main thrust of the prosecution's argument was that under California law, those who take part in gang warfare are equally responsi-

ble for the death of an innocent bystander. This was her underlying theory at *both* trials. It is true that certain details came into evidence differently at the two trials, but the prosecution's theory was not inconsistent in any fundamental way. We hold that the California courts did not err when they concluded in this case that the prosecutor did not violate Nguyen's right to due process of law. It follows that those decisions were not reversible under AEDPA as unreasonable applications of clearly established law.

AFFIRMED.