Filed 5/13/14  P. v. Chavez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH ELIAS CHAVEZ,<br><br>    Defendant and Appellant. | B249453<br><br>(Los Angeles County<br>Super. Ct. No. BA377693) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Kennedy, Judge.  Affirmed.

Willoughby & Associates, W. Anthony Willoughby and Vanessa M. Ames, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Jonathan J. Kline, Shawn McGahey Webb and Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Joseph Elias Chavez was convicted, following a jury trial, of one count of assault with a firearm on John Doe in violation of Penal Code[1] section 245, subdivision (a)(2) (count 2) and two counts of shooting at an occupied vehicle in violation of section 246 (counts 3 and 8).[2] The jury found true the allegation that a principal was armed with a firearm in the commission of the assault within the meaning of section 12022, subdivision (a)(1). The trial court sentenced appellant to the upper term of seven years for the count 3 shooting conviction, plus the mid-term of 20 months for the count 8 shooting conviction, for a total term of eight years, eight months in state prison. the court stayed sentence on the count 2 assault conviction pursuant to section 654.

Appellant appeals from the judgment of conviction, contending there is insufficient evidence to support his conviction and further contending the prosecutor improperly argued a theory of guilt which was inconsistent with the theory offered at the trial of co-defendant Daniel Gonzalez. Appellant also contends the trial court relied on improper factors in imposing the upper term on count 3. We affirm the judgment of conviction.

Facts

On October 9, 2010, about 4:00 p.m., Larry Hooks was stopped at a traffic light at the intersection of Figueroa Street and Gage Avenue. He heard two to four gunshots, looked in his rear view mirror and saw a Ford F-150 followed by a black Jeep Cherokee, both traveling at a high rate of speed. The vehicles passed Hooks' vehicle and ran the red

---

[1] All further statutory references are to the Penal Code.

[2] Appellant was charged with the attempted murder of John Doe, assault with a firearm on John Doe and shooting at an occupied vehicle in counts 1 through 3. Appellant was charged with assault with a firearm on Larry Hooks in count 5 and shooting at an occupied vehicle in count 8. The first jury impaneled to try appellant's case could not reach a unanimous decision on any count, and the trial court declared a mistrial. The second jury convicted appellant of the charges in counts 2, 3 and 8, and acquitted him on the other counts.

light at the intersection at speeds of 60 to 80 miles per hour. There were two African-American males in the F-150 and two Hispanic males in the Jeep.

As the vehicles drove away, Hooks saw the passenger of the Jeep lean out the window with his arm extended toward the F-150. Hooks heard two to four gunshots. He called 911.

Oscar Figueroa ("Oscar F.") was in his auto mechanic shop at the corner of 54th and Figueroa Streets when he heard a loud crash. He looked toward the intersection and saw that a white Ford truck had caused another white truck to hit a traffic light pole. The Ford, driven by a male, went eastbound on 54th Street. It was followed by a dark brown SUV. There were two Hispanic males in the SUV. The driver was shorter than the passenger. The passenger leaned out the window with a gun in his hand and fired toward the Ford.

Miguel Magallanes, who lived on 54th Street near San Pedro Street, heard a crash followed by a gunshot. He soon heard a man screaming, "Murder, murder." Magallanes looked out his door and saw an African-American male running past his house. Then a Jeep Cherokee drove by his house very rapidly. It looked to Magallanes like the Jeep was following the man. When Magallanes looked outside a few minutes later, he saw a white F-150 had crashed at the corner of 54th and San Pedro Streets.

A recording from a security camera at the intersection showed the F-150 crashing into a pole. A man got out of the F-150 and began running. (This man was apparently never identified and is referred to in the pleadings as John Doe.) The recording then showed the Jeep arriving at the crash. It stopped and a man got out of the passenger seat and began chasing the man from the F-150. The Jeep made a U-turn and drove back along 54th Street.

911 operators received eleven calls about the shootings. In one call, a woman stated that she had witnessed a black Jeep Cherokee driving close behind another vehicle causing it to crash. There were Hispanic males in the Jeep and a single African-American male driving the vehicle that crashed. The African-American male got out of his vehicle and started running. The men in the Jeep got out guns and drove around,

3

apparently looking for the driver. Another 911 caller reported gunshots at 54th and Main Streets. The shots were fired by two men in black Jeep Cherokee. They were firing at an African-American man.

Los Angeles Police Department Officer Gregory Sovick and his partner went to the intersection of 54th and Figueroa Streets where the first crash had occurred. Oscar F. approached Officer Sovick and spoke with him. Hooks, who had continued driving on Figueroa Street after the shooting incident, had stopped when he reached the crash at 54th Street, believing it was related to the earlier shooting. He spoke with a police officer there.

Officer Sovick and his partner then began to drive toward 54th and San Pedro Streets. While driving, they heard from a police airship that a black Jeep Cherokee was in the vicinity of 54th Street and Broadway. As they neared the vicinity of 54th Street and Broadway, they saw the Jeep. Officer Timothy Jang and his partner saw the Jeep at about the same time. The four officers stopped the Jeep. There were two occupants in the Jeep. Appellant got out of the front passenger seat. The other occupant of the Jeep was Daniel Gonzalez, aka Edward Luna.

Hooks, too, drove to the vicinity of 54th Street and Broadway. He saw that police had stopped the Jeep. Hooks spoke with police, who asked him if recognized the Jeep or the two men. Hooks identified the Jeep, but could not identify the men. Hooks told officers that if the two men had been in the Jeep, they were the ones doing the shooting. Hooks then drove to 54th and San Pedro Streets, saw the crashed F-150 and then returned to 54th Street and Broadway. There, he showed Officer Sovick a bullet hole in his Explorer just above the brake light.

Officer Sovik brought Oscar F. to 54th Street and Broadway to view the two occupants of the Jeep. Oscar F. identified the Jeep as the SUV he had seen chasing the Ford truck. He identified appellant as the driver of the Jeep and Gonzalez as the passenger who leaned out the window with a gun. Oscar F. later told police he was not sure if the SUV he saw was black or if it was a Jeep Cherokee.

4

Police arrested appellant and Gonzalez. At that time, appellant was five feet, five inches tall and weighed 190 pounds. Gonzalez was five feet, nine inches tall and weighed 210 pounds. At the police station, appellant asked Officer Sovick if he was going to get into trouble for the hit and run and also asked if anyone had been hurt.

Police searched the Jeep, but found no weapons, ammunition or shell casings.

Gonzalez was tried separately from appellant. Hooks was at witness at Gonzalez's trial. He was asked if he had told police officers that Gonzalez was the shooter. He replied, "yes, sir." When questioned about this testimony at appellant's trial, Hooks explained that he had told the officers that he could not tell appellant and Gonzalez apart because he did not see their faces. Hooks repeated that it was the passenger who had done the shooting. He identified Gonzalez as the shooter because of body type and because "it had come to [his] knowledge that he was the one leaning out."

Oscar F. also testified at appellant's trial. He stated that the SUV he saw was not a Jeep Cherokee. He also testified that the men in the field show-up looked "most similar" to the men in the SUV.

Appellant's counsel asserted in his opening statement that appellant and his cousin Gonzalez stopped at business near Florence Avenue and Figueroa Street. Gonzalez went inside the business and inadvertently interrupted a robbery in progress. The robbers took $6,000 from Gonzalez and fled in an F-150 truck. Gonzalez got into his vehicle and pursued the robbers to recover his money. Other victims of the robbery also gave chase. Appellant did not present any evidence to support this theory, however. He did not testify and did not call any witnesses.

Discussion

1. Sufficiency of the evidence

Appellant contends there is insufficient evidence to support his convictions for assault with a firearm and shooting at an occupied vehicle as either a principal or an aider and abettor.

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] [I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.]" (*People v. Nelson* (2011) 51 Cal.4th 198, 210 [internal quotation marks omitted].)

In his opening brief, appellant contends the jury found he "did not possess a firearm at any time during the commission of" the charged crimes and so he could not have been convicted as the actual perpetrator. The jury made no such specific finding. The jury was asked to find if a principal was armed in the commission of the assault, and found that allegation true.[3] The jury was not asked to consider an allegation that appellant was personally armed in the commission of the assault.

In his reply brief, appellant contends there is no direct or circumstantial evidence at all proving he fired the gun. Appellant is mistaken.

---

3 Section 12022, subdivision (a)(1), the section upon which the allegation was based, provides that it applies "to a person who is a principal in the commission or attempted commission of a felony or attempted felony if one or more of the principals is armed with a firearm, *whether or not* the person is personally armed with a firearm." (Italics added.)

6

Both Hooks and Oscar F. testified that the passenger of the SUV leaned out the window and fired a gun. When the Jeep Cherokee was stopped by police, both officers saw appellant get out of the front passenger seat. This supports a reasonable inference that appellant was the shooter and is substantial evidence supporting the jury's verdict.

This is true even though each man's testimony contained contradictions. "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 403; see *In re Robert V.* (1982) 132 Cal.App.3d 815, 821 ["The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions."].)

As the prosecutor acknowledged, the evidence was conflicting on whether appellant was the passenger-shooter or driver. There is substantial evidence to show that if appellant was the driver, he aided and abetted the shootings.

"An aider and abettor is one who aids, promotes, encourages or instigates a crime with knowledge of the unlawful purpose of the perpetrator and intent to assist in the commission of the crime. (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1158, citing *People v. Beeman* (1984) 35 Cal.3d 547, 560.) Factors that may be considered when determining whether a defendant aided and abetted a crime include his presence at the crime scene, his companionship with the actual perpetrator, and his conduct before and after the offense. (*In re Juan G.* (2003) 112 Cal.App.4th 1, 5.) "Whether a person has aided and abetted in the commission of a crime is a question of fact, and on appeal all conflicts in the evidence and attendant reasonable inferences are resolved in favor of the judgment." (*Ibid*.)

Here, assuming appellant was the driver of the Jeep, the Jeep had already begun chasing the F-150 at a high rate of speed and shots had been fired before the two vehicles passed Hooks' vehicle. After the vehicles passed Hooks, more shots were fired from the Jeep. The F-150 caused another truck to crash. The Jeep continued to pursue the F-150

7

at a high rate of speed and additional shots were fired from the Jeep. After the F-150 crashed into a pole and the driver fled on foot, the driver of the Jeep stopped to let out the passenger, who then chased the F-150's driver on foot. Thus, the driver drove the Jeep in a manner that facilitated the passenger's shooting at the occupant of the F-150.

This is sufficient to support a reasonable inference that appellant intended to aid and abet Gonzalez in the shootings. (*In re Jose D.* (1990) 219 Cal.App.3d 582, 585 [substantial evidence supported the defendant's murder and assault conviction on aiding and abetting theory where evidence showed that he drove a car and deliberately maneuvered it so that the passenger could point a gun at the victims].)

Relying on *Rosemond v. U.S.* (2014) __ U.S. __ [134 S.Ct. 1240, __L.Ed.2d __], appellant contends the People were required to show that he knew before the chase began that Gonzalez had a gun, so that appellant had the opportunity to decline to participate in the shootings. *Rosemond* involves a federal statute increasing the penalty for a drug offense when one of the participants is armed, and so is factually distinguishable. Further, the reasoning of *Rosemond* does not assist appellant. As the Court noted in *Rosemond*, "Of course, if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had [advance] knowledge. In any criminal case, after all, the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission." (*Id.* at p. 1250 fn. 9.) That was the case here.


2. Inconsistent prosecution theories

Appellant argues the prosecutor committed prejudicial prosecutorial misconduct when he presented the theory in this case that appellant may have been the driver or the shooter after arguing in Gonzalez's trial that Gonzalez was the shooter.

A prosecutor commits misconduct and violates a defendant's right to due process if, without a good faith justification, he or she "attribute[s] to two defendants, in separate trials, a criminal act only one defendant could have committed." (*In re Sakarias* (2005) 35 Cal.4th 140, 155-156.) There is no due process violation if there is a good faith

8

justification for the use of inconsistent theories, such as a significant change in the available evidence between trials. (*Id.* at pp. 159-160, 162.)

Some inconsistencies in theories are permissible. As our Supreme Court has found, there is no misconduct in arguing inconsistent theories which are "fundamentally consistent because any variation did not concern a fact used to convict the defendant or increase his or her punishment. (See *Nguyen v. Lindsey* (9th Cir. 2000) 232 F.3d 1236, 1240-1241 [variation in prosecutorial argument as to which of two gangs fired the first shot in a gun battle that killed a bystander not significant where prosecutor at both trials pursued the same 'underlying theory' that all participants in the gang battle were equally responsible for the death].)" (*In re Sakarias, supra*, 35 Cal.4th at p. 161.) In *Nguyen*, "the prosecutor made different arguments at each trial [as to who fired the first shot], but it is also true that these arguments were consistent with the evidence actually adduced at each trial." (*Nguyen v. Lindsey, supra*, 232 F.3d at pp. 1240-1241.)

On the record before us on appeal, there is no basis to find prosecutorial misconduct. There are no facts in the record before us concerning the prosecutor's arguments or theories in Gonzalez's trial.[4] For that reason, appellant's claim fails. Further, even if the prosecutor's theory in Gonzalez's trial was that Gonzalez was the shooter, appellant has not shown prosecutorial misconduct.[5]

The record in this case shows that Hooks changed his testimony between trials. At appellant's trial, Hooks was asked, "Did you, in Mr. [Gonzalez]'s trial, identify Mr. [Gonzalez] as the one leaning out the passenger window doing the shooting?" Hooks replied, "I don't think that's what I testified to, sir." Hooks was then impeached with his testimony from Gonzalez's trial, in which he was asked, "[D]id you identify to the police officers that the defendant, Mr. [Gonzalez] – who was in court – was the one leaning outside the passenger window shooting?" Hooks replied, "Yes, sir." When asked if he

---

[4]    The transcript of Gonzalez's trial is not part of the record on appeal in this case.

[5]    The parties in appellant's trial and on this appeal appear to agree that the People's theory in Gonzalez's trial was that Gonzalez was the shooter.

remembered this testimony, Hooks replied, "Yeah, but that was after it had come to my knowledge that he was the one leaning out, sir. [¶] I didn't know either one of these gentleman was driving or the other one was the passenger."

Thus, at appellant's trial, Hooks called into doubt his prior testimony at Gonzalez's trial and testified that he could only say that whoever was the passenger was the shooter. Given that appellant was the passenger when the Jeep was stopped, Hooks testimony that the passenger was the shooter created an inference that appellant was the shooter.

There was other evidence showing that appellant was the driver, primarily the testimony of Oscar F., but it was equivocal.[6] Given Hooks' change in testimony and the equivocal nature of Oscar F.'s testimony, appellant has not shown bad faith on the part of the prosecutor in arguing that appellant was either the driver or the shooter, but was liable in either case. The prosecutor's argument is consistent with the evidence at appellant's trial.

To the extent that appellant claims the prosecutor "must" have recognized Hooks' testimony at this trial was false once it was given and so should not have not relied on it in any way, we do not agree. The jury was aware of Hooks' change in testimony, and it was the jury's task to decide Hooks' credibility.

We note that both parties make factual assertions which are not supported by the record. Appellant, for example, claims that Judge Ohta told the prosecutor in appellant's first trial that it was improper to argue that appellant was the shooter. Appellant also claims the prosecutor "must have known" before trial that Hooks was going to change his testimony. For its part, respondent claims that Gonzalez testified at his own trial that appellant was the shooter. We do not consider these unsupported factual assertions.

---

[6]    Officer Sovick testified that Oscar F. identified Gonzalez to police as the passenger who leaned out of the window with a gun and appellant as the driver. Officer Sovick also testified that Oscar F. told police that the Jeep was the SUV he saw chasing the truck. Oscar's trial testimony was much less definite. He testified appellant and Gonzalez "look[ed] most similar" to the men in the SUV. He also testified that he told police that the Jeep was not the car chasing the truck.

10

Claims which require a consideration of facts outside the appellate record are more appropriately raised in a petition for writ of habeas corpus.

### 3. Upper term

Appellant was convicted of one count of assault on John Doe and two counts of shooting at an occupied vehicle. No victims were named in the vehicle shooting counts. The grouping of the charges in the information and the prosecution's arguments show that the count 3 vehicle shooting charged was intended to refer to John Doe's vehicle and the count 8 charge to Hooks' vehicle.

The court imposed the high term on the count 8 conviction "because of the nature of the violent conduct of the defendant, the fact that the victims were vulnerable and the fact that defendant was on misdemeanor probation at the time of the offense." The court imposed the mid-term for count 3 consecutively to count 8 "because of the fact that this was a separate victim and a separate shooting."

Appellant contends the trial court erred in making these sentencing choices. He contends he was not on probation at the time of the offenses. He further argues the only identified victim was the John Doe on the count 2 assault conviction, and so the victim vulnerability and separate victim factors were improper.

Respondent contends appellant has forfeited these claims by failing to object in the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 353.)

Appellant has preserved his claims. The court did not err in its sentencing choices.

### a. Victim-related factors

At the sentencing hearing, appellant argued that there was no known victim in the counts 3 and 8 shootings at an occupied vehicle offenses, and the only known victim was on the count 2 assault charge. This is sufficient to preserve appellant's claim that the court erred in imposing consecutive sentences on the basis of separate victims. It is also sufficient to preserve appellant's claim that the victim vulnerability factor was not applicable and so the high term was not warranted for count 8.

11

i.  Number of victims

Appellant claims that because there were no victims listed in the information for the count 3 and count 8 charges of shooting at an occupied vehicle, there were no victims in those counts.  The shootings occurred while the vehicles were being driven.  Clearly, there was a person in each vehicle.  Thus, regardless of their identities, there were two different victims on the two different counts.  The trial court properly imposed consecutive sentences.  (See *People v. Coleman* (1991) 53 Cal.3d 949, 953-954 [trial court has discretion to impose consecutive sentences where defendant committed separate crimes against multiple victims]; § 1170.1, subd. (a) [subordinate term for consecutive offense shall consist of one-third of the midterm for the subordinate offense].)


ii. Identity of victims

Appellant contends that even if there were victims on the shooting at an occupied vehicle charge, the identity of the victim on the count 8 charge was unknown, and so the court could not properly find the victim vulnerable.

The court understood the count 8 charge to refer to Hooks' vehicle and this is consistent with the pleadings, evidence and argument of the prosecutor.  Thus, the trial court properly viewed Hooks as the victim of the count 8 offense.

Appellant argues that the jury did not find any of Hooks' testimony credible and so must have found the count 8 vehicle belonged to an unknown third party, presumably the white truck which crashed into a pole near the intersection of 54th Street and Figueroa Avenue.  He contends that since this truck belonged to an unknown third party, the court's reliance on the vulnerable victim factor unfounded.  There is no way to know if the jury found Hooks credible in whole, part or not at all.  Further, appellant points to no evidence that shots were fired at the white truck involved in the Figueroa crash.

Even assuming appellant's contentions were correct, those contentions would not invalidate the court's reliance on the vulnerable victim  factor.  The driver of the white truck was in the same position as Hooks.  Both were innocent bystanders who happened to be driving on or across Figueroa at the same time the Jeep was chasing the F-150

12

truck.  Hooks was shot at without any warning or provocation, and the same appears true for the driver of the white truck.  Neither person had any apparent ability to protect himself or herself.  Thus, she or he was a vulnerable victim.  (See *People v. Eades* (1979) 95 Cal.App.3d 688, 690 [unsuspecting police officer/driver of vehicle who was shot by back seat passenger without warning, motive of provocation could not protect himself and was a vulnerable victim so as to warrant imposition of an aggravated sentence].)[7] The trial court properly relied on the victim vulnerability factor in sentencing appellant to the upper term on count 8.

      b. Probation factor

When the court asked the parties about the prosecutor's statement in his sentencing memorandum that appellant was on probation, appellant's counsel stated that he was not on probation.  This was sufficient to preserve the issue for appeal.

The probation report shows that appellant was placed on 24 months of probation in 2007.  Probation thus would have ended in 2009, a year before the crimes in this case were committed.  Respondent acknowledges this on appeal.  Thus, the probation factor was not valid.

We find the trial court's consideration of the invalid probation factor harmless. Two valid aggravating factors remain to support the upper term.  A single aggravating factor is sufficient.  (*People v. Osband* (1996) 13 Cal.4th 622, 732.)

This is not a case where the trial court placed heavy emphasis on a factor later shown to be invalid.  The court's comments show that it placed the most emphasis on "the really dangerous conduct" by appellant.  The Court pointed out that the crimes took place on city streets with cars "breaking traffic laws . . . and shooting" and found "[t]his

---

[7]     To the extent that appellant contends that vulnerable victims are limited to the "elderly, very young or disabled, or otherwise obviously and indisputably vulnerable," he is mistaken.  Appellant takes this language from *People v. Sandoval* (2007) 41 Cal.4th 825, 842.  While the listed victims are vulnerable, they are not the only vulnerable victims.  The Court in *Sandoval* was not limiting vulnerable victims to those described in appellant's quote.  (*Ibid*.)

is particularly dangerous behavior on the part of the defendant and his companion." The court also found "And the other victims in this case, Mr. Hooks and just anybody that was on the street, were really totally vulnerable to what was going on because they weren't involved." The court pointed out that while no one was injured and the damages was relatively minor, "it could have been much more serious." These factors remain valid. Thus, there is no reasonable probability the court would sentence appellant to a lower term in the absence of the probation aggravating factor.

Disposition

The judgment of conviction is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MINK, J.[*]

We concur:

MOSK, ACTING P. J.

KRIEGLER, J.

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.